1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    HERMINIO A. MORFIN,

11                 Petitioner,                    No. CIV S-10-1223 KJM DAD P

12          vs.

13    S. SALINAS,

14                 Respondent.              FINDINGS & RECOMMENDATIONS

15    _____/

16          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17    corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises several challenges to the decision of the

18    California Board of Parole Hearings (hereinafter "Board") to deny him parole at his parole

19    consideration hearing held on October 23, 2008.  The matter has been fully briefed by the parties

20    and is submitted for decision.  Upon careful consideration of the record and the applicable law,

21    the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

22    I.  Procedural Background

23          Petitioner is confined pursuant to a 1985 judgment of conviction entered against

24    him in the Yuba County Superior Court following his conviction on charges of second degree

25    /////

26    /////

1

1   murder with use of a firearm and assault with use of a firearm.  (Doc. 1 at 1.)[1]  Pursuant to that

2   conviction, petitioner was sentenced to twenty years to life in state prison.  (Id.)

3          The parole consideration hearing that is placed at issue by the instant federal

4   habeas petition was held on October 23, 2008.  (Doc. 10-1 at 53).  Petitioner appeared at and

5   participated in that hearing.  (Id. at 56-88.)  Following deliberations held at the conclusion of the

6   hearing, the Board panel announced their decision to deny petitioner parole for two years as well

7   as the reasons for that decision.  (Id. at 89-96.)

8          Petitioner first challenged the Board's 2008 decision denying him parole in a

9   petition for writ of habeas corpus filed in the Yuba County Superior Court.  (Doc. 10-1.)  The

10  Superior Court denied that petition, reasoning as follows:

11          The Court has reviewed the Petition for Writ of Habeas Corpus.

12          The issue on habeas review of denial of parole is whether "some
            evidence" supports the Board's decision.  In re Rosenkrantz (2002)
13          29 Cal.4th 616, 625.

14          The largely hypothetical discussion in the petition as to language
            barrier, that is contended to have created a defective record, is
15          insufficient.  To take but one example is the following from the
            petition attachment: " . . . [W]hat was the actual Spanish word
16          used; did the Petitioner actually say 'Accidente' or 'error'?  We'll
            never know."  Petitioner is the person who is being quoted in this
17          passage, yet he discusses the contents of the conversation only
            hypothetically.  Theoretical discussions cannot form the basis of
18          relief.  The numerous factors recited in the petition are sufficient to
            meet the "some evidence" standard.  Petitioner has failed to
19          affirmatively show his entitlement to relief.  The petition is denied.

20  (Doc. 10-2.)

21          Petitioner subsequently challenged the Board's 2008 decision denying him parole

22  in a petition for writ of habeas corpus filed in the California Court of Appeal for the Third

23  Appellate District.  (Doc. 10-3.)  The California Court of Appeal denied that petition with a

24  citation to In re Steele, 32 Cal.4th 682, 692 (2004) (holding that motions for post-conviction

25

26      [1]  The court's citations to the record refer to the electronic numbering system on all
        documents filed electronically with the court.

2

1    discovery should generally be brought in the trial court that rendered the judgment) and In re

2    Hillery, 202 Cal. App.2d 293 (1962) (holding that an appellate court has discretion to refuse to

3    issue a writ of habeas corpus where the application for the writ has not been made in the lower

4    court in the first instance).  (Doc. 10-4.)

5           Petitioner subsequently filed a petition for writ of habeas corpus in the California

6    Supreme Court, wherein he provided evidence that he had filed habeas petitions in both the

7    California Superior Court and California Court of Appeal.  (Doc. No. 10-5.)  That petition was

8    summarily denied.  (Doc. No. 10-6.)

9           On May 19, 2010, petitioner filed his federal application for habeas relief in this

10    court.

11    II.  Standards of Review Applicable to Habeas Corpus Claims

12           An application for a writ of habeas corpus by a person in custody under a

13    judgment of a state court can be granted only for violations of the Constitution or laws of the

14    United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

15    interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

16    13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

17    1149 (9th Cir. 2000).

18           Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

19    habeas corpus relief:

20           An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall

21    not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the

22    claim -

23           (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as

24    determined by the Supreme Court of the United States; or

25           (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the

26    State court proceeding.

3

1     For purposes of applying § 2254(d)(1), "clearly established federal law" consists

2  of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

3  Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

4  (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

5  clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

6  859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

7     A state court decision is "contrary to" clearly established federal law if it applies a

8  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

9  Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640

10  (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

11  grant the writ if the state court identifies the correct governing legal principle from the Supreme

12  Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

13  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

14  F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

15  simply because that court concludes in its independent judgment that the relevant state-court

16  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

17  application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v.

18  Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

19  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

20  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

21  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

22  the state court's decision."  Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

23  (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

24

25     [2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26  presented in the state court proceeding."  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)
   (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

2   ruling on the claim being presented in federal court was so lacking in justification that there was

3   an error well understood and comprehended in existing law beyond any possibility for fairminded

4   disagreement." Harrington, 131 S. Ct. at 786-87.

5           If the state court's decision does not meet the criteria set forth in § 2254(d), a

6   reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v.

7   Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

8   Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

9   of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

10  considering de novo the constitutional issues raised.").

11          The court looks to the last reasoned state court decision as the basis for the state

12  court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

13  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

14  from a previous state court decision, this court may consider both decisions to ascertain the

15  reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

16  banc).  "When a federal claim has been presented to a state court and the state court has denied

17  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

18  of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at

19  784-85.  This presumption may be overcome by a showing "there is reason to think some other

20  explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker,

21  501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

22  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

23  determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860;

24  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is

25  not de novo review of the constitutional issue, but rather, the only method by which we can

26  determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at

5

853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

III.  Petitioner's Claims

A.  Due Process

In petitioner's first ground for relief, he claims that the Board's 2008 decision finding him unsuitable for parole violated his right to due process.  (Doc. No. 1 at 5.) Specifically, petitioner raises the following arguments: (1) the Board's decision finding him unsuitable for parole was "without sufficient evidence that is supported by the record;" (2) the factors relied on by the Board to deny petitioner parole "do not lead to proof that petitioner is a current threat;" (3) the Board's 2008 decision was "arbitrary and capricious;" (4) the Board failed to follow the relevant state and federal rules and "format" in concluding that petitioner was not suitable for parole; (5) petitioner must be released because he has served his "minimum term;" (6) the Board improperly relied on unchanging factors to find petitioner unsuitable for parole even though those factors do not demonstrate that he was a current danger to society; (7) the totality of the evidence at the hearing reflects that petitioner is suitable for parole; (8) according to petitioner's version of the events, it is possible that the murder for which he was convicted might have been "an Accident or Mistake;" (9) petitioner's remarks at the parole suitability hearing might have been misconstrued because of a language barrier; (10) petitioner's psychological evaluation reflected that he posed a low risk of danger to society if released; and (11) petitioner has programmed well while in prison and has otherwise demonstrated that he is

1  suitable to be released.  (Id. at 5-17).  All of these arguments share a common thread.  They each

2  attack the sufficiency of the evidence relied upon by the Board to find petitioner unsuitable for

3  parole.

4          The Due Process Clause of the Fourteenth Amendment prohibits state action that

5  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

6  due process violation must first demonstrate that he was deprived of a liberty or property interest

7  protected by the Due Process Clause and then show that the procedures attendant upon the

8  deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

9  490 U.S. 454, 459-60 (1989).

10         A protected liberty interest may arise from either the Due Process Clause of the

11  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

12  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

13  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

14  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

15  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

16  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

17  person to be conditionally released before the expiration of a valid sentence.").  However, a

18  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

19  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

20  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

21         California's parole scheme gives rise to a liberty interest in parole protected by the

22  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

23  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.

24  Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in

25  this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639

26  F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that

1    California law creates a liberty interest in parole.")  In California, a prisoner is entitled to release

2    on parole unless there is "some evidence" of his or her current dangerousness.  In re Lawrence,

3    44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

4                In Swarthout, the Supreme Court reviewed two cases in which California

5    prisoners were denied parole - in one case by the Board, and in the other by the Governor after

6    the Board had granted parole.  Swarthout, 131 S. Ct. at 860-61.  The Supreme Court noted that

7    when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment

8    requires fair procedures, "and federal courts will review the application of those constitutionally

9    required procedures."  Id. at 862.  The Court concluded that in the parole context, however, "the

10   procedures required are minimal" and that the "Constitution does not require more" than "an

11   opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

12   Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

13   decisions that went beyond these minimal procedural requirements and "reviewed the state

14   courts' decisions on the merits and concluded that they had unreasonably determined the facts in

15   light of the evidence."  Swarthout, 131 S. Ct. at 862.  In particular, the Supreme Court rejected

16   the application of the "some evidence" standard to parole decisions by the California courts as a

17   component of the federal due process standard.  Id. at 862-63.  See also Pearson, 639 F.3d at

18   1191.[3]

19               As explained above, petitioner is claiming, in essence, that the Board's 2008

20   decision to deny him parole, and the findings upon which that denial was based, were not

21   supported by "some evidence" as required under California law.  However, under the Supreme

22

23            [3] In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four
24   years the Ninth Circuit had consistently held that in order to comport with due process a state
     parole board's decision to deny parole had to be supported by "some evidence," as defined in
25   Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v.
     Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d
26   895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole
     rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

1   Court's decision in <u>Swarthout</u> this court may not review whether California's "some evidence"

2   standard was correctly applied in petitioner's case.  131 S. Ct. at 862-63; <u>see also</u> <u>Miller v.</u>

3   <u>Oregon Bd. of Parole and Post-Prison Supervision</u>, 642 F.3d 711, 716 (9th Cir. 2011) ("The

4   Supreme Court held in [<u>Swarthout v.</u>] <u>Cooke</u> that in the context of parole eligibility decisions the

5   due process right is *procedural*, and entitles a prisoner to nothing more than a fair hearing and a

6   statement of reasons for a parole board's decision[.]"); <u>Roberts v. Hartley</u>, 640 F.3d 1042, 1045-

7   46 (9th Cir. 2011) (under the decision in <u>Swarthout</u>, California's parole scheme creates no

8   substantive due process rights and any procedural due process requirement is met as long as the

9   state provides an inmate seeking parole with an opportunity to be heard and a statement of the

10  reasons why parole was denied); <u>Pearson</u>, 639 F.3d at 1191 ("While the Court did not define the

11  minimum process required by the Due Process Clause for denial parole under the California

12  system, it made clear that the Clause's requirements were satisfied where the inmates 'were

13  allowed to speak at their parole hearings and to contest the evidence against them, were afforded

14  access to their records in advance, and were notified as to the reasons why parole was denied.'")

15          The federal habeas petition pending before the court in this case reflects that

16  petitioner was represented by counsel and had a Spanish language interpreter at his 2008 parole

17  suitability hearing.  (Doc. No. 10-1 at 56, et seq.)  There is no evidence in the record before this

18  court that petitioner did not understand the proceedings or that anything that occurred at the

19  suitability hearing was mistranslated.  The record also establishes that at that hearing petitioner

20  was given the opportunity to be heard and received a statement of the reasons why parole was

21  denied by the Board panel.  (<u>Id.</u>)  That is all the process that was due petitioner under the

22  Constitution.  <u>Swarthout</u>, 131 S. Ct. 862; <u>see also</u> <u>Miller</u>, 642 F.3d at 716; <u>Roberts</u>, 640 F.3d at

23  1045-46; <u>Pearson</u>, 639 F.3d at 1191.  It now plainly appears that petitioner is not entitled to relief

24  with respect to his due process claims. Accordingly, petitioner's due process challenge to the

25  Board's 2008 decision denying him parole should be rejected.

26  /////

B.  Ex Post Facto/Marsy's Law

In the pending petition, petitioner also requests that the court "issue an injunction to . . . bar the use of Proposition 9 (Marsy's Law) at petitioner's future Parole Hearings until this case is resolved."  (Doc. No. 1 at 21.)  In the traverse, petitioner raises several claims based on the Ex Post Facto Clause and Marsy's Law.  His first such claim is that "changes to Parole Authority Law (Board and Governor) over the past thirty (30) years" have resulted in a violation of the Ex Post Facto Clause because these changes have made it "more difficult to be found suitable for, and released on parole."  (Doc. No. 11 at 7.)  Petitioner particularly complains that, over the years, the Board members themselves have evolved from representing a true cross-section of the community to "members who matriculate from Law Enforcement, Legislative, and Attorney backgrounds, who bend to the wishes of Victim's Rights groups."  (Id.)  Petitioner also argues that evolving changes in the interpretation of California's parole laws, and the adoption of "underground regulations," when considered cumulatively, violate the Ex Post Facto Clause. (Id.)  Petitioner informs the court that he is raising a claim that "stems from California's Proposition 9 (aka Marsy's Law)."  (Id.)  He argues that Marsy's Law has changed the focus of parole suitability hearings from rehabilitation of the inmate "to one that focuses on the victim." (Id.)  He also notes that Marsy's Law changed "parole denials from a minimum of one year and a maximum of five years to a minimum of 3 to 15 years denial plan."  (Id.)  In sum, petitioner argues that his "Ex Post Facto Rights were violated in the thirty (30) years of Parole Authority changes up to and including Marsy's Law."  (Id. at 11.)  Finally, petitioner argues that if he "would have otherwise been eligible for Relief before the AEDPA, and is not now, then the AEDPA is Ex Post Facto."  (Id. at 19.)

Petitioner's Ex Post Facto claims are set forth in his traverse.  To the extent petitioner is attempting to belatedly and improperly raise new claims to relief in the traverse, relief should be denied on that basis alone.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief); see

1    also Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only

2    issues which are argued specifically and distinctly in a party's opening brief").  Even if

3    petitioner's Ex Post Facto claims had been properly raised in this habeas proceeding, he has

4    failed to demonstrate entitlement to relief.

5          California Proposition 9, also known as Marsy's Law, approved by California

6    voters in November 2008, amended California law governing parole deferral periods.  See

7    Gilman v. Davis, 690 F. Supp. 2d 1105, 1109-13 (E.D. Cal. 2010), rev'd sub nom. Gilman v.

8    Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011).  Prior to Marsy's Law, the Board deferred

9    subsequent parole suitability hearings to indeterminately-sentenced inmates for one year unless

10   the Board determined it was unreasonable to expect that parole could be granted the following

11   year, in which case the Board could defer the subsequent parole suitability hearing for up to five

12   years.  Cal. Pen. Code § 3041.5(b)(2) (2008).  Marsy's Law amended § 3041.5(b)(2) to impose a

13   minimum deferral period of three years, and to authorize the Board's deferral of a subsequent

14   parole hearing for up to seven, ten, or fifteen years.  Id. § 3041.5(b)(3) (2010).

15         Petitioner's parole suitability hearing took place on March 19, 2008, prior to the

16   enactment of Marsy's Law.  The Board's decision to defer petitioner's next parole suitability

17   hearing for two years was made pursuant to the law in effect at the time petitioner's hearing took

18   place.  The subsequent changes made by Marsy's Law to the rules in effect at the time of

19   petitioner's parole hearing are therefore irrelevant to petitioner's Ex Post Facto claims.  See

20   Pearson, 639 F.3d at 1187 n.2 ("Because Pearson's parole suitability hearing occurred well before

21   the passage of Proposition 9, the changes it made to the California parole system are irrelevant

22   for purposes of this appeal.").  Therefore, petitioner's claims based on challenges to Marsy's Law

23   should be rejected.

24         Petitioner's Ex Post Facto claims are unavailing even when analyzed under the

25   law as it existed prior to the enactment of Marsy's Law.  The United States Constitution provides

26   that "No State shall . . . pass any . . . ex post facto Law."  U.S. Const. art. I, § 10.  The Ex Post

Facto Clause is violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.  Himes, 336 F.3d at 854.  Not every law that disadvantages a defendant is a prohibited ex post facto law.  Rather, the retroactive application of a change in state parole procedures violates ex post facto only if there exists a "significant risk" that such application will increase the punishment for the crime.  See Garner v. Jones, 529 U.S. 244, 259 (2000).

California Penal Code § 3041.5 has been amended several times since the date petitioner's judgment of conviction was entered to allow for longer periods of time between parole suitability hearings.  Ex Post Facto challenges to those amendments have all been rejected. See Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 509 (1995) (1981 amendment to California Penal Code § 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Clifton v. Attorney General Of the State of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (concluding it was not a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the implementation of California's Determinate Sentence Law in 1977); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (same); see also Garner, 529 U.S. at 249 (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983); Wilkinson v. Dotson, 544 U.S. 74 (2005) (holding that inmates are not required to bring their challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but may pursue their claims in § 1983 actions).  Cf. Gilman v. Schwarzenegger, 638 F.3d 1101, 1110 (9th Cir. 2011) (overturning a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law).

1    In light of these cases, the state courts' rejection of petitioner's claim that the

2  deferral of his next parole suitability hearing for two years violated the Ex Post Facto Clause is

3  neither contrary to, nor an unreasonable application of federal law.  Cf. Foster v. Booker, 595

4  F.3d 353 (6th Cir. 2010) (inmates in class action failed to demonstrate that changes to

5  Michigan's discretionary parole laws, as implemented and applied retroactively to their parole

6  review hearings, violated the Ex Post Facto and Due Process Clauses).   Similarly, petitioner has

7  failed to cite any controlling federal authority for the proposition that AEDPA itself violates the

8  Ex Post Facto Clause or that changes over the years to California law as it relates to parole

9  suitability hearings violate the Ex Post Facto Clause.  Therefore, petitioner is not entitled to

10  federal habeas relief on his Ex Post Facto claims.[4]

11    C.  Denial of Access to the Courts: Due Process and Equal Protection Violations

12    Petitioner's final claim is that he is "being denied reasonable 'access to the court'"

13  in violation of his rights to due process and equal protection.  (Doc. No. 1 at 22.)  In this regard,

14  petitioner appears to be alleging that he was unable to meaningfully participate in the 2008 parole

15  consideration hearing, or to pursue legal challenges to the Board's 2008 decision denying him

16  parole, because of his inability to speak and understand the English language.  Specifically,

17  petitioner argues that respondent violated his federal constitutional rights "in not providing

18  adequate assistance and materials necessary for a non-English speaking [inmate] . . . to exercise

19  his constitutional right to appeal, reasonable access to court, a parole authority decision and to

20  participate in the process to a greater extent."  (Id. at 26.)

21

22    [4]  Petitioner complains that the California courts failed to address the merits and
"perform the required analysis" in rejecting his Ex Post Facto claims.  (Doc. No. 11 at 8.)
23  However, as set forth above, the United States Supreme Court has explained that when a federal
claim has been presented to a state court and the state court has denied relief, "it may be
24  presumed that the state court adjudicated the claim on the merits in the absence of any indication
or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at 784-85.
25  Accordingly, the state courts' failure to articulate the rationale underlying its ruling on
petitioner's Ex Post Facto claims does not violate AEDPA standards and it may not be set aside
26  on that basis.

1    Petitioner contends that there was a "a severe communication problem on several

2 levels" at his 2008 parole consideration hearing because he is of "of an advance[d] age (73+)"

3 and has "memory lapses." (Id. at 12). Petitioner explains that he has had no formal schooling

4 and "has been tested at a 1.7 Grade Point Level." (Id. at 13, 21). He states that a prison educator

5 opined that "further attempts at education would be futile" and that petitioner had "reached a

6 plateau." (Id. at 22.)

7    Petitioner also states that he requires the services of a Spanish language

8 interpreter. (Id.) He informs this court that prison reports, his mental health evaluation, and the

9 transcript of his 2008 parole consideration hearing were all given to him in English and that he

10 has not been able to obtain a Spanish translation of these documents so that he can prepare an

11 appeal. (Id. at 22.) Petitioner argues that he "should not have to rely on English speaking

12 inmates . . . to ensure that he has an opportunity to obtain Access to the Courts." (Doc. No. 11 at

13 9.)

14    Petitioner explains that he has recently realized "he has a right to an appeal and

15 the resources needed to make that appeal," but that he was not provided a staff member to assist

16 in the filing of an appeal. (Id.) He complains that he cannot understand the forms for filing an

17 appeal because they are not in Spanish and that he was not given instructions on how to file the

18 forms. (Id. at 23.) He argues that "respondents have effectively blocked all access to courts by

19 not making provisions available to the non-English speaking inmates." (Id.) Petitioner further

20 argues that "in order for his Due Process Rights to be protected, there should be a bi-lingual

21 transcript, the Spanish words actually included in the transcript for the Court to read and another

22 transcript translated in Spanish for the Petitioner." (Id.) Petitioner states that it "would also be

23 necessary for there to be Habeas Corpus forms and Rule books in Spanish." (Id.) Petitioner

24 suggests that the court "could order that the Board produce the audio file (on compact disc) and

25 the court could review the language translation on its own without the need to create a new

26 record, or the court could rule against Respondent on the Insight/Remorse issue (conflicting

14

1  statements) and rule on the rest of the petition."  (Id. at 24.)

2        Petitioner points out that the California Court of Appeal did not address his

3  habeas petition on the merits and argues that because that court denied relief with citations to the

4  decisions in In re Steele and In re Hillery, it must have mistakenly concluded that he failed to file

5  a habeas petition in the Superior Court before filing one in the Court of Appeal.  (Id.)  It is

6  possible, but not entirely clear, that petitioner is blaming the state court's mistake in this regard

7  on his own failure to fill out the form habeas petition in adequate English.  Petitioner also

8  contends that the California Court of Appeal and California Supreme Court "erred in not

9  responding to the grounds in the petition and in failing to answer the objections to the Superior

10  Court denial; issuing a summary denial."  (Id. at 27.)

11        Finally, petitioner argues that he was unable to comply with the recommendations

12  of the Board members at the 2008 parole suitability hearing because he could not read the

13  hearing transcript.  (Id. at 22.)  He further alleges that, although he was provided with an

14  interpreter at the 2008 parole hearing, "the Spanish language, as with other languages, does not

15  translate well into the English language."  (Id. at 13.)  Petitioner argues that as a result of these

16  "barriers," it is "understandable that statements and versions would appear inconsistent."  (Id.)

17        Petitioner has failed to demonstrate a constitutional violation arising from the

18  failure of prison officials or the State of California to provide sufficient English language

19  translation.  Petitioner's overall contention is that he has been denied access to the courts because

20  he is not an English speaker and therefore does not understand documents written in English or

21  hearings conducted in English.  It is true that "[p]risoners have a constitutional right of access to

22  the courts guaranteed by the Fourteenth Amendment," as set forth in Bounds v. Smith, 430 U.S.

23  817, 821 (1977)).  However, an inmate alleging a violation of Bounds must demonstrate an

24  actual injury to court access, defined as a specific "instance in which an inmate was actually

25  denied access to the courts."  Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) (quoting

26  Kershner v. Mazurkiewicz, 670 F.2d 440, 444 (3rd Cir. 1982)).  See also Lewis v. Casey, 518

U.S. 343, 351-52 (1996).  To demonstrate "actual injury," plaintiff must show that he "could not present a claim to the courts because of the state's failure to fulfill its constitutional obligations." Allen v. Sakai, 48 F.3d 1082, 1091 (9th Cir. 1995).  There is no evidence here that petitioner has been unable to present a claim to any court because of a language barrier or for any other reason. On the contrary, petitioner appealed the Board's 2008 suitability decision to the fullest extent possible, both in state court and in this court.  This court has reviewed all of petitioner's filings in this court, and finds that they are competent, thorough, and legible.  Any argument that the California Court of Appeal cited inapplicable case authority in denying petitioner habeas relief because his claims were not presented in an intelligible manner is not supported by the record before this court.

Petitioner has also failed to establish that he was unable to participate in his 2008 parole suitability hearing because of his inability to speak or understand English.  Petitioner was provided a Spanish/English interpreter who translated for him everything that transpired at the hearing, including the Board's decision and recommendations.  Petitioner has pointed to nothing in the record which would indicate or suggest that he did not understand the translation, that the interpreter was unable to translate any part of the hearing, or that the translation provided him was incorrect in any way.  Indeed, petitioner confirmed on the record at the 2008 parole hearing that he could understand the interpreter.  (Doc. 10-3 at 60.)  Petitioner was also represented by an attorney at that hearing.  In short, petitioner was granted, through the use of a Spanish language interpreter, a meaningful right to be heard at his 2008 parole suitability hearing and was advised of the reasons for the Board's decision denying him parole.  As set forth above, this is all that the Due Process Clause requires in the context of parole suitability hearings.  Swarthout, 131 S. Ct. 862; see also Miller, 642 F.3d at 716; Roberts, 640 F.3d at 1045-46; Pearson, 639 F.3d at 1191.

Nor has petitioner demonstrated an equal protection violation.  A petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for

16

1   its decision.  McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett, 924

2   F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to even allege that the Board violated his

3   equal protection rights by applying a different suitability standard to him than to others similarly

4   situated, or that any other inmate who was similarly situated to him was granted a parole date.

5          The state courts' rejection of petitioner's claims that he was denied the right to

6   access the courts, to due process, or to equal protection was not contrary to or an unreasonable

7   application of federal law, nor was it based on an unreasonable determination of the facts before

8   the state courts.  Accordingly, petitioner is not entitled to federal habeas relief with respect to

9   these claims.

10  IV.  Request for Appointment of Counsel

11          Petitioner requests the appointment of counsel "due to Petitioner's age,

12  educational level, and language barriers."  (Doc. No. 1 at 21, 24.)   There currently exists no

13  absolute right to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d

14  453, 460 (9th Cir. 1996).  Title 18 U.S.C. § 3006A authorizes the appointment of counsel at any

15  stage of the case "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing § 2254

16  Cases.  However, in the present case, this court does not find that the interests of justice would be

17  served by the appointment of counsel.  Accordingly, petitioner's request for counsel should be

18  denied.

19  V.  Request for Evidentiary Hearing

20          In his petition and traverse, petitioner requests an evidentiary hearing "to clarify

21  questions of fact and record."  (Doc. No. 1 at 21; Doc. No. 11 at 21.)

22          Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under

23  the following circumstances:

24          (e)(2) If the applicant has failed to develop the factual basis of a
            claim in State court proceedings, the court shall not hold an
25          evidentiary hearing on the claim unless the applicant shows that-

26  /////

17

1               (A) the claim relies on-

2               (i) a new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously
3               unavailable; or

4               (ii) a factual predicate that could not have been previously
discovered through the exercise of due diligence; and
5

6               (B) the facts underlying the claim would be sufficient to establish
by clear and convincing evidence that but for constitutional error,
no reasonable fact finder would have found the applicant guilty of
7               the underlying offense[.]

8        Under this statutory scheme, a district court presented with a request for an

9 evidentiary hearing must first determine whether a factual basis exists in the record to support a

10 petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v.

11 Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166

12 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner

13 requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim

14 for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

15 Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th

16 Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts

17 which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998)

18 (internal quotation marks and citation omitted).[5]

19        The court concludes that no additional factual supplementation is necessary in this

20 case and that an evidentiary hearing is not appropriate with respect to the claims raised in the

21 instant petition.  For the reasons described above, the facts alleged in support of these claims,

22 even if established at a hearing, would not entitle petitioner to federal habeas relief.  Further,

23 petitioner has not identified any concrete and material factual conflict that would require this

24

25      [5] In addition, the Supreme Court has recently held that federal habeas review under 28
U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the
26 claim on the merits" and "that evidence introduced in federal court has no bearing on" such
review. Cullen v. Pinholster, 563 U.S. ___, ___, 131 S. Ct. 1388, 1398, 1400 (2011).

1   court to hold an evidentiary hearing in order to resolve.  Therefore, petitioner's request for an

2   evidentiary hearing should be denied.

3                                                    CONCLUSION

4          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

5   application for a writ of habeas corpus be denied.

6          These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

8   one days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within fourteen days after service of the objections.  Failure to file

12  objections within the specified time may waive the right to appeal the District Court's order.

13  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

14  1991).

15         In any objections he elects to file, petitioner may address whether a certificate of

16  appealability should issue in the event he files an appeal of the judgment in this case.  See Rule

17  11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

18  certificate of appealability when it enters a final order adverse to the applicant); Hayward v.

19  Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of

20  appealability to review the denial of a habeas petition challenging an administrative decision

21  such as the denial of parole by the parole board).

22  DATED: April 26, 2012.

23

24                                                    _____

25  DAD:8:                                            DALE A. DROZD
    morfin1223.hc                                     UNITED STATES MAGISTRATE JUDGE
26

                                                19